IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARIA DEL CARMEN TABOAS,

    **Plaintiff,**

            **v.**                     **CIVIL NO.** 13-1205 (FAB)

FIDDLER, GONZALEZ & RODRIGUEZ,
PSC,

    **Defendant.**

OPINION AND ORDER

BESOSA, District Judge.

    Before the Court are defendant Fiddler, Gonzalez & Rodriguez, PSC ("FGR")'s motion for summary judgment (Docket No. 51); plaintiff Maria del Carmen Taboas ("Taboas")'s motion for partial summary judgment (Docket No. 54); and plaintiff Taboas' two motions to strike (Docket Nos. 60 & 76). For the reasons that follow, plaintiff Taboas' motions to strike are **GRANTED IN PART AND DENIED IN PART**; FGR's motion for summary judgment is **DENIED**; and plaintiff Taboas' motion for partial summary judgment is **DENIED**.

I.  **Plaintiff Taboas' Motions to Strike**

    Before turning to FGR's motion for summary judgment, the Court addresses plaintiff Taboas' motions to strike various exhibits submitted by FGR in support of its motion. (Docket Nos. 60 & 76.) After addressing each category of exhibits in turn, the Court **GRANTS IN PART AND DENIES IN PART** Taboas' first motion to strike

(Docket No. 60), and **DENIES** her second motion to strike (Docket No. 76).

### A.   Chart Summaries

Plaintiff Taboas argues that two charts summarizing employee billings (Docket Nos. 51-11 & 51-29) are inadmissible at the summary judgment stage because defendant failed to comply with the "made available" requirement of Federal Rule of Evidence 1006. Rule 1006, however, applies where "a summary" is being used "to prove the content of voluminous writings." Fed. R. Evid. 1006. Because the charts are productivity reports offered as independent business records produced and kept within the ordinary course of FGR's business and admissible under Federal Rule of Evidence 803(6), the charts are "the writings at issue, not summaries of other evidence." U-Haul Int'l., Inc. v. Lumbermens Mut. Cas. Co., 576 F.3d 1040, 1046 (9th Cir. 2009). Thus, Rule 1006 does not apply, and plaintiff Taboas' motion to strike (Docket No. 60) the charts at docket numbers 51-11 and 51-29 is **DENIED.**

### B.   Hearsay Statements

Plaintiff Taboas seeks to exclude several exhibits, including correspondence and Shareholders' statements, as inadmissible hearsay. (Docket Nos. 51-14; 51-15 at p. 21; 51-16 at pp. 59-61; 51-17 at pp. 10, 14-16, 24; 51-21 at p. 29; 51-22; 51-23 at ¶¶ 9-10; 51-24 at p. 30; & 51-27 at ¶¶ 17-21.) "Hearsay evidence, inadmissible at trial, cannot be considered on a motion

for summary judgment." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990) (internal citations omitted).   Taboas' motion (Docket No. 60) is **GRANTED** insofar as the statements are offered for the truth of the matters asserted therein, but **DENIED** as to non-hearsay purposes.   See, e.g., Vazquez-Valentin v. Santiago-Diaz, 459 F.3d 144, 151 (1st Cir. 2006) (excluded documents were not hearsay because they were not offered to prove the truth of the matter asserted); Keisling v. SER-Jobs for Progress, Inc., 19 F.3d 755, 762 (1st Cir. 1994) (exclusion of statements that were not offered to prove the truth of the matters asserted therein was error warranting reversal); Cameron v. Comty. Aid for Retarded Children, Inc., 335 F.3d 60, 65 n.2 (2d Cir. 2003) (noting that because the statements were offered to establish defendant's state of mind, rather than to prove the truth of the matter assert therein, they did not constitute hearsay).

   C.   **Statements by Kenneth Bury and Gloria Perez de Martinez**

         Plaintiff Taboas seeks to exclude statements made by witnesses Kenneth Bury ("Bury") and Gloria Perez de Martinez ("Perez") regarding FGR's decisions with respect to plaintiff Taboas' salary increases, bonuses, and promotions, arguing that the witnesses are not competent to testify about those facts.   (Docket Nos. 51-6 and 51-7.)   Affidavits submitted in support of a motion for summary judgment must "contain[] relevant information of which [the affiant] has first-hand knowledge."   Santiago-Ramos v.

Civil No. 13-1205 (FAB)                                                      4

Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000)

(internal quotation marks and citation omitted).

       In support of its motion for summary judgment, FGR

repeatedly indicates that FGR's Executive Committee,

              assessed and analyzed plaintiff's production
              reports; concluded that plaintiff was a
              chronic under-producer; believed the
              information provided to them to be true;
              considered that plaintiff had failed to
              improve her production despite the sanctions
              had been imposed against her; and understood
              that it was in the firm's best interest to
              terminate her employment.

(Docket No. 51-1 at p. 3.)  Both Bury and Perez testified in their

depositions that they did not attend any Executive Committee or

Board of Directors meeting in which Taboas was discussed.  (Docket

Nos. 60-2 at pp. 46-7; 60-1 at p. 41.)  Nevertheless, both stated

in their unsworn declarations that, "[d]ue to her poor

productivity," Taboas received or did not receive certain bonuses

or salary increases.  (Docket Nos. 51-7 at ¶¶ 14-16; 51-16 at

¶ 10.)  Because Bury and Perez admittedly did not participate in

the committee or board meetings in which FGR made those decisions

regarding Taboas, neither have personal knowledge of the decisions

and both are therefore incompetent to testify about those

decisions.  Accordingly, the Court **GRANTS** plaintiff Taboas' motion

to strike (Docket No. 60) paragraphs 14 through 16 of Bury's

declaration (51-7), and paragraph 10 of Perez's declaration (Docket

No. 51-6).

>    **D.    Salvador Antonetti Zequeira and Pedro Manzano Yates's Sham Affidavits**

Lastly, plaintiff Taboas moves to strike two "sham" or deficient statements made under penalty of perjury by Salvador Antonetti-Zequeira ("Antonetti") (Docket No. 51-23) and Pedro Manzano-Yates ("Manzano") (Docket Nos. 51-24 & 61-1). "When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 5 (1st Cir. 1994) (internal citation omitted).

Here, Antonetti's original deposition testimony cannot be classified as providing "clear answers" or being "clearly contradictory" to his later declaration. In his deposition, when asked to be more specific about the date of the meeting in question, Antonetti responded, "Now it's very difficult," and later, "I think January or February." (Docket No. 60-3 at p. 16.) After refreshing his memory regarding the exact date of the meeting (see Docket No. 84-5 at ¶ 6), Antonetti stated in an unsworn declaration under penalty of perjury that the meeting took place on January 14, 2009. (Docket No. 51-23 at ¶¶ 17-18.)

When asked at his deposition whether FGR had considered Taboas' billables at the time she was ultimately dismissed, Manzano testified,

>            And what we had undertaken, or what we had
>            decided to do, and had informed her that we
>            would do, and what we had stayed for
>            particular reasons, was no longer necessary;
>            and then we communicated the termination. . .
>            . We looked at her entire history. . . . I'm
>            not looking at January thirty first, sir, I
>            said that the decision had been made in
>            February two thousand eleven, and then after
>            that we were authorized by the board, and then
>            we looked at the numbers in March.  In March,
>            but we looked at the entire history.

(Docket No. 76-1 at pp. 49-50.)  Manzano subsequently testified, "I
believe I haven't [answered your question], because after two
thousand nine she was . . . she did not meet budget, and certainly,
in two thousand ten she did not meet budget."  (Docket No. 84-6 at
p. 52.)  Taboas claims that this testimony conflicts with Manzano's
subsequent unsworn statement, in which he states, "Taboas' billing
as of February 2011 was not considered by FGR's Executive Committee
in the decision to terminate her employment at the firm or in the
decision to execute her termination effective April 30, 2011."
(Docket No. 61-1 at ¶ 7.)

        The pertinent portions of the record convince the Court
that the contested affidavits are not "simply an attempt to create
a 'sham fact issue.'"  See Law Co. v. Mohawk Constr. & Supply Co.,
577 F.3d 1164, 1169 (10th Cir. 2009) (internal quotations and
citation omitted).  Rather, the witnesses' deposition testimonies,
particularly when examined with more complete excerpts, "reflect[]
confusion which the affidavit[s] attempt[] to explain."  Id.
Accordingly, plaintiff Taboas' motions to strike Manzano's

affidavit (Docket No. 76) and Antonetti's affidavit (Docket No. 60) are **DENIED.**

## II.  Motions for Summary Judgment

On March 8, 2013, Taboas filed a complaint against FGR alleging wrongful termination in violation of the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and supplemental Puerto Rico law claims pursuant to Laws 100 and 80 ("Law 100" and "Law 80"), P.R. Laws. Ann. tit. 29 §§ 146 *et seq.* and §§ 185a *et seq*, respectively. (Docket No. 1.)  On June 6, 2013, FGR moved for summary judgment, arguing (1) that plaintiff Taboas' claims pursuant to the ADEA and Law 100 are time-barred; (2) that plaintiff Taboas' ADEA claim fails on its merits; and (3) that plaintiff Taboas' has no viable claims pursuant to Laws 100 or 80.  (Docket No. 51.)  Plaintiff Taboas moves for summary judgment of her Law 80 claim, contending that FGR has not carried its burden in rebutting the presumption of wrongful termination triggered by her allegations and proof.  (Docket No. 54.)

### A.  Time Bar

Defendant FGR seeks dismissal of plaintiff Taboas' ADEA and Law 100 claims as time-barred.

#### 1.  ADEA Claim

The ADEA prohibits discrimination on the basis of age "against any individual with respect to compensation, terms,

conditions, or privileges of employment." 29 U.S.C. § 623(a)(1).
Because Puerto Rico has a law prohibiting employment discrimination
on the basis of age and an agency authorized to seek relief from
those discriminatory practice, see 29 U.S.C. § 633(b), employees
must file a charge of unlawful age discrimination in employment
with the Equal Employment Opportunity Commission ("EEOC")
"within 300 days after the alleged unlawful practice occurred, or
within 30 days after receipt by the individual of notice of
termination of proceedings under State law, whichever is earlier,"
29 U.S.C. § 626(d)(1)(B).   The ADEA filing period is not a
jurisdictional prerequisite to suit, but rather a statute of
limitations issue. Kale v. Combined Ins. Co. of Am., 861 F.2d 746,
751-52 (1st Cir. 1988).   Failure to file a timely charge of age
discrimination bars a subsequent action pursuant to the ADEA.
O'Neill v. N.Y. Times Co., 145 Fed. Appx. 691, 694 (1st Cir. 2005);
Am. Airlines, Inc. v. Cardoza-Rodriguez, 133 F.3d 111, 123 (1st
Cir. 1998).   "It is by now well established that, in employment
discrimination actions, limitations periods normally start to run
when the employer's decision is made and communicated to the
affected employee," Morris v. Gov't. Dev. Bank of P.R., 27 F.3d
746, 750 (1st Cir. 1994) (citing Del. State. Coll. v. Ricks, 449
U.S. 250, 261 (1980)), and not the date on which employment ceased.
Miller v. Int'l. Tel. & Tel. Corp., 755 F.2d 20, 23 (2d Cir. 2000);
Leite v. Kennecott Copper Corp., 558 F. Supp. 1170, 1172 (D. Mass.

1983) (citing <u>Chardon v. Fernandez</u>, 454 U.S. 6, 8 (1981) (*per curiam*) ("[T]he proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful.") and <u>Pfister v. Allied Corp.</u>, 539 F. Supp. 224, 226 (S.D.N.Y. 1982)).

FGR contends that its Executive Committee made the decision to terminate plaintiff Taboas' employment in November, 2008, and communicated that decision to her on January 14, 2009. (Docket No. 51-1 at p. 6.)  Taboas responds that FGR did not provide her with <u>definite</u> notice of her dismissal until March 30, 2011. (Docket No. 64 at pp. 4-7.)  The uncontested facts reveal that FGR decided to offer Taboas an of-counsel contract in late 2008. (Docket No. 51-23 at ¶¶ 13-16.)  Jose Acosta-Grubb ("Acosta") and Antonetti met with Taboas on January 14, 2009 and offered her an of-counsel contract, providing her with a copy of it. (Docket Nos. 51-4 at pp. 80-3; 51-27 at ¶¶ 8-10; 51-23 at ¶¶ 17-20.)  Later that same night, however, Acosta called Taboas at her home to inform her that "Pete and Eduardo and Freddie[1] . . . are on board" and that "things were going to continue the same." (Docket No. 51-19 at p. 23.)  On January 20, 2009, Taboas informed Antonetti that she did not have information that she had requested regarding the of-counsel contract; Antonetti responded to her that

---

[1] These names refer to members of FGR's Executive Committee at the time.  (Docket No. 51-19.)

she would continue as an employee of the firm.  (Docket No. 63-29 at ¶ 7.)  Taboas thus worked as an FGR employee for two additional years, until April 30, 2011.  (Docket Nos. 1 at ¶ 3.19; 9 at ¶ 30.) The of-counsel contract was not mentioned again until March 30, 2011, when Acosta offered Taboas the same contract, which she rejected.  (Docket Nos. 51-19 at pp. 37-38; 63-7 at p. 95.)

While "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination," Ricks, 449 U.S. at 257 (citing United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977)), the termination date must be "the inevitable consequence" of an actual or constructive discharge.  See Cardoza-Rodriguez, 133 F.3d at 123 (applying Ricks to hold that the statute of limitations began to run when each employee accepted a voluntary retirement package, rather than when their employment actually terminated); Alicea v. Ondeo de P.R., 389 F. Supp. 2d 269, 275 (D.P.R. 2005) (Dominguez, J.) ("[C]ontinuity of employment . . . is insufficient to prolong the life of this type of cause of action.") (internal citations omitted).  The statute of limitations begins to run once "the employee receives a definite notice of the termination."  Miller, 755 F.2d at 23 (emphasis added) (internal citations omitted).  FGR claims that the January 14, 2009 meeting at which Acosta and Antonetti provided Taboas with an of-counsel contract triggered the

statute of limitations.  Accepting this conclusion would require a strained interpretation of the uncontested facts.

At the January 14, 2009 meeting, FGR hinted at a change in Taboas' employment arrangement, but did not present her with a <u>definite</u> "take it or leave it" choice between accepting an of-counsel agreement and losing her job altogether.  <u>See</u> <u>Cardoza-Rodriguez</u>, 133 F.3d at 123.  The only time a definite termination was communicated to Taboas was at the March 30, 2011 meeting, when FGR offered her the take it or leave it choice between accepting an of-counsel contract and terminating her employment at FGR.  (Docket Nos. 51-19 at pp. 37-38; 63-7 at p. 95.)  Thus, the statute of limitations began to run on March 30, 2011.  Because plaintiff Taboas filed her charge with the EEOC on December 20, 2011 (Docket No. 1 at ¶ 3.22), 265 days later, she filed within the 300-day deadline.

### 2.  Law 100 Claim

The Supreme Court of Puerto Rico has held that the one-year limitation period applicable to civil actions for "tortious discrimination" also applies to Law 100 claims. <u>Rodriguez-Torres v. Caribbean Forms Mfr., Inc.</u>, 399 F.3d 52, 60 (1st Cir. 2005); <u>Damiani Montalban v. P.R. Marine Mgmt., Inc.</u>, 986 F.2d 1407, 3 (1st Cir. 1993) (citing <u>Olmo v. Young & Ribicam of P.R., Inc.</u>, 10 Off. Trans. 967 (1981)).  An action pursuant to Law 100 accrues on the date the employee receives notice of his or her

termination, <u>Damiani Montalban</u>, 986 F.2d at 3, or, in a "take it or leave it" constructive discharge scenario, on "the date the employee elects to retire." <u>Cardoza-Rodriguez</u>, 133 F.3d at 124.

Puerto Rico law provides for tolling of the statute of limitations for Law 100 claims once a plaintiff files an administrative charge with the EEOC and notifies his or her employer of the charge. P.R. Laws. Ann. tit. 31 § 5303; <u>Rodriguez-Torres</u>, 399 F.3d at 61. Taboas filed a charge, of which FGR had notice, with the EEOC on December 20, 2011, tolling the statute of limitations. (Docket No. 1 at ¶ 3.22.) The EEOC completed its administrative proceedings on December 14, 2012, when it issued Taboas a right to sue letter. <u>Id.</u> at ¶ 3.23. When Taboas filed suit on March 8, 2013, 349 un-tolled days had elapsed since she received notice of her termination on March 30, 2011. Accordingly, plaintiff Taboas' Law 100 claim is not time-barred, and FGR's motion for summary judgment of plaintiff Taboas' ADEA and Law 100 claims as time-barred is **DENIED.**

**B.   ADEA Age Discrimination Claim - the Merits**

FGR seeks summary judgment of plaintiff Taboas' ADEA age discrimination claim. (Docket No. 51.) In ADEA claims where, as here, the employee offers no direct evidence of discrimination, a three-step burden-shifting framework applies. <u>Velazquez-Fernandez v. NCE Foods, Inc.</u>, 476 F.3d 6, 11 (1st Cir. 2007) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-05 (1973)).

The employee must first show:  (1) that she was at least forty years old when the adverse employment action was taken against her; (2) that her job performance met the employer's legitimate expectations; (3) that she suffered an adverse employment action; and (4) that the employer filled the position, thereby showing a continuing need for the services that she had been rendering. Melendez v. Autogermana, Inc., 622 F.3d 46, 50 (1st Cir. 2010). Once established, the *prima facie* showing "gives rise to a rebuttable presumption that the employer engaged in intentional age-based discrimination." Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995) (citations omitted).  The burden of production then shifts to the employer "to produce sufficient competent evidence to allow a rational fact-finder to conclude that a legitimate non-discriminatory reason existed for the termination." Melendez, 622 F.3d at 50. If the employer presents such a reason, the presumption is removed; the employee must then prove that the employer's proffered reason was mere pretext, and that "the record evidence would permit a reasonable jury to infer that the real reason was discriminatory animus based on [his or her] age." Id. (internal quotations and citation omitted).

### 1. *Prima Facie* Case

The parties do not dispute the first and third *prima facie* elements.  Plaintiff Taboas was 55 years old when FGR notified her of her dismissal on March 30, 2011. (Docket Nos. 1 at

¶ 3.19; 51-4 at p. 7.)  FGR contends, however, that Taboas fails to demonstrate the second and fourth elements — that her job performance met its legitimate expectations, and that FGR filled her position.  (Docket No. 51-1 at p. 11.)

### a.   Legitimate Job Expectations

FGR argues that plaintiff Taboas' job performance did not meet FGR's legitimate expectations because she failed to satisfy the firm's yearly production goal and assigned billing budget during most or all of her years at the firm. (Docket Nos. 51-4 at pp. 34-35; 51-7 at ¶¶ 9-11; 51-11.)  As the First Circuit Court of Appeals has advised, however, the Court cannot "consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the *prima facie* case."  Melendez, 622 F.3d at 51 (internal quotations and citation omitted).  Because FGR invokes Taboas' allegedly poor performance in arguing that she was dismissed for non-discriminatory reasons, the Court cannot rely on that performance in assessing whether she satisfied the legitimate expectations prong.  See id.  ("If we were to consider [a defendant's] stated reason for firing [a plaintiff] as evidence that [a plaintiff] was not meeting the company's expectations, we would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext

Civil No. 13-1205 (FAB)                                           15

designed to mask discrimination.") (internal quotations and citation omitted).

To establish that she was indeed meeting FGR's legitimate expectations, Taboas points to the following facts: (1) she worked at FGR for more than 32 years (Docket Nos. 51-4 at p. 23; 51-6 at ¶ 5); (2) she was promoted to the position of Senior Associate in 1986, and the position of Member in 1990 (Docket Nos. 51-4 at p. 51 & 51-6 at ¶¶ 7-8); (3) she received praise for the quality of her work on numerous occasions (Docket Nos. 63-11 — 63-20); and (4) she received salary increases and at least one performance bonus during her tenure at the firm (Docket No. 63-6 at pp. 25-27). "Mindful that an employee's burden at the *prima facie* stage is not particularly onerous," the Court finds the evidence minimally sufficient to show that a triable issue exists as to whether Taboas was meeting FGR's legitimate expectations at the time of her dismissal. See <u>Melendez</u>, 622 F.3d at 51.

**b.   FGR's Continuing Need for the Position**

FGR further contends that plaintiff Taboas cannot satisfy the fourth *prima facie* prong because it did not hire anyone to replace her. (Docket No. 51-1 at p. 13.) Taboas argues that FGR rehired attorney Jose Ramirez-Coll ("Ramirez") to occupy the same position from which she was dismissed — Member in the litigation division. (Docket No. 64 at p. 11.) FGR concedes its rehiring of Ramirez to the position of Member in November of 2011,

but disputes that he replaced Taboas. (Docket Nos. 51-1 at p. 13; 79 at p. 5.) In 2010, when Ramirez worked as a Junior Partner at FGR, he informed the firm that he wanted to pursue employment elsewhere. (Docket No. 51-3 at ¶ 51.) In an effort to retain Ramirez, FGR told him that it was planning to promote him to the position of Member in December, 2010. (Docket Nos. 51-3 at ¶ 52 and 51-27 at ¶ 37.) Ramirez nevertheless resigned from FGR in March, 2010. (Docket Nos. 51-3 at ¶ 53 & 51-27 at ¶ 38.) FGR contends that it rehired Ramirez as a Member in 2011 not because FGR sought to replace Taboas, but because Ramirez would have been promoted to that position within a few months of his earlier departure had he stayed. (Docket Nos. 51-3 at ¶ 56 & 51-27 at ¶ 41.)

The Court finds that the record contains sufficient evidence to suggest "that the employer sought some form of replacement performance, which would demonstrate its continued need for the same services and skills." Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 332-33 (1st Cir. 1997)(internal quotations and citations omitted). A reasonable factfinder could conclude that FGR hired Ramirez to fill the position that Taboas had recently vacated, thereby showing the firm's continued need for the position, as well as the services and skills that Taboas previously provided. Accordingly, plaintiff Taboas has satisfied

her *prima facie* showing, and the burden shifts to FGR to produce a legitimate and non-discriminatory reason for Taboas's termination.

### 2.   **FGR's Legitimate and Non-Discriminatory Reasons for Dismissing Taboas**

Even if plaintiff Taboas is able to meet all four elements of a *prima facie* case, defendant FGR contends that it had two legitimate and non-discriminatory reasons for dismissing her: (1) Taboas consistently failed to meet FGR's production goals; and (2) Taboas was difficult to work with, according to both clients and her colleagues at the firm.  (Docket No. 51-1 at pp. 13-15.) Uncontested facts establish that, at all relevant times, FGR attorneys had yearly production goals of 2,000 billable hours, and specific billing budgets for each attorney.  (Docket Nos. 51-3 at ¶ 16; 51-7 at ¶ 6.)  Plaintiff Taboas consistently fell short of those production goals during her tenure at FGR.  (Docket Nos. 51-4 at pp. 34-35; 51-7 at ¶¶ 9-10; 51-11.)  From 1992 until 2011, Taboas only met her assigned production budget twice, and she never reached FGR's hours-based production goal.  (Docket Nos. 51-4 at pp. 34-35; 51-7 at ¶¶ 10-13; & 51-11.)  Additionally, several Shareholders in the litigation division found Taboas difficult to work with, and two clients communicated to her superiors their desires to have her removed from their cases (Docket Nos. 51-3 at ¶ 29; 51-8 at p. 2; 51-15 at p. 21; 51-22; 51-16 at pp. 30, 59, 60; 51-23 at ¶ 9; 51-4 at pp. 42, 69, 73; 51-27 at ¶¶ 18-21; 51-17 at pp. 10, 24.)  This is enough "to enable a rational factfinder to

conclude that there existed a nondiscriminatory reason" for Taboas'
dismissal.  Ruiz v. Posadas de San Juan Assocs., 124 F.3d 243, 248
(1st Cir. 1997); see also Garcia v. Bristol-Myers Squibb Co., 535
F.3d 23, 31 (1st Cir. 2008) (employer's assertion that employee's
discharge was due to deficient performance satisfied employer's
burden of providing a legitimate, nondiscriminatory reason).

### 3.   Pretext and Discriminatory Animus

At the final stage, the burden shifts to plaintiff
Taboas to put forth sufficient facts for a reasonable fact-finder
to conclude that defendant FGR's proffered reasons for discharging
her are mere pretext masking discriminatory animus.  See Melendez,
622 F.3d at 52.  To make a showing of pretext, a plaintiff must
"elucidate specific facts which would enable a jury to find that
the reason given is not only a sham, but a sham intended to cover
up the employer's real motive: age discrimination."  Id. (quoting
Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991)).
"Satisfying this third-stage burden does not necessarily require
independent evidence of discriminatory animus."  Rathbun v.
Autozone, 361 F.3d 62, 72 (1st Cir. 2004).  Rather, an employee may
show, for example, "such weaknesses, implausibilities,
inconsistencies, incoherencies, or contradictions in the employer's
proffered legitimate reasons for its action that a reasonable
factfinder could rationally find them unworthy of credence and
[with or without additional evidence and inferences properly drawn

therefrom] infer that the employer did not act for the asserted non-discriminatory reasons." Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998) (internal quotations and citations omitted)(alterations in original).

Upon review of the record, the Court finds several aspects that, taken together, support a factfinder's conclusion that FGR was motivated by age-based discrimination, which raise a genuine issue of material fact that defeats summary judgment. These include (1) the ambiguity of FGR's production requirements and resulting uncertainty regarding whether Taboas violated those requirements; (2) ambiguity about whether Taboas's underproductivity was a result of her being assigned cases with low billing rates; (3) the lack of documentation evidencing the decisions made by FGR's Executive Committee regarding hiring and firing; and (4) FGR's disparate treatment of younger employees.

### a.   Ambiguous Production Requirements

FGR places great weight on the fact that Taboas consistently failed to meet her production requirements. FGR, however, has not produced any document that explicitly informs Taboas of an hours requirement, only documents that refer to contemplated or suggested "goals". (See Docket Nos. 51-3 at ¶ 16 ("production goal" of 2,000 hours per year); 51-7 at ¶ 8 (same)). FGR issued written promotion guidelines in 2006, but these guidelines did not include numbers indicating production goals or

requirements. (Docket No. 51-5 at pp. 3-4.) FGR points to communications between its lawyers and Taboas that refer to an hourly standard used to determine eligibility for bonus and salary increases. On August 11, 2004, Antonetti sent an email to the litigation department regarding hours and bonuses, noting that "a standard of 2000 billable hours is used as a minimum for 10 points, and points for over 2000 are added and points are subtracted if the 2000 are not achieved." (Docket No. 51-9.) The e-mail further noted that, "It has been discussed among the Partners to require the minimum of 2000 for consideration of promotions, raises and bonuses." Id. FGR produced no evidence, however, to indicate that the 2,000-hour minimum was ever adopted, or that it served as a minimum employment requirement. On January 13, 2005,[2] Antonetti delivered a letter to Taboas that stated,

> in view of your production and other factors, you will receive 50% of the bonus distributed, if any in excess of the basic bonus during the fiscal year 2004-2005. The Board expects that this measure will serve as a positive encouragement, since we understand your enhanced capacity to bring your production to what is expected of a Shareholder of the law firm.

(Docket No. 51-12.) Antonetti wrote Taboas a letter on February 24, 2005, noting that her "billable hours [had] not reached the 1,800 hours except in 2002." (Docket No. 51-8 at p. 2.) On

---

[2] A hand-written note at the top of this letter indicates that it was received on January 19, 2005. (Docket No. 51-12.)

December 14, 2005, Rafael Vizcarrondo delivered a letter to Taboas stating, "The Board of Directors unanimously determined that you will not receive the salary increase approved for the Members for the year 2005-2006. The Board expects this measure serves as a positive encouragement to improve your performance. . . ." (Docket No. 51-14.)   The language in these communications does not foreclose an inference that those measures were intended as inducements, rather than sanctions or notices of requirements necessary for continued employment, as FGR suggests.

FGR does, however, provide documents evidencing that Taboas was aware of her yearly billing budgets, and that she failed to meet them for consecutive years, from 2008 to 2010. (Docket No. 51-10 pp. 1-45.)   The billing reports do indicate that Taboas was above-budget prior to her dismissal, in December 2010 and January 2011. Id. at pp. 46-48.   As explained below, however, the Court finds an issue regarding the rates at which Taboas was assigned to bill.

**b.   Taboas's Assignments**

While Taboas may be unable to point to evidence that would directly refute the legitimacy of FGR's proffered reasons for her dismissal, her contentions that FGR assigned her significant amounts of government contract work to be billed at

rates well below her standard hourly rate[3] (Docket No. 64 at pp. 21-2) create a factual dispute regarding whether FGR leadership played a part in preventing Taboas from reaching her standard budget.  FGR's attorney budgets were calculated using the standard rate for Members, which in 2009-2011 was $260 per hour.  (Docket No. 51-7 at ¶ 6.)  In 2005, Taboas wrote to Antonetti regarding her productivity report, pointing out that she had been assigned multiple matters, including government contract work, to be billed at $125.00 per hour, while her standard rate was $230.00.  (Docket No. 63-25.)  Taboas noted that in order to produce her standard budget at the reduced rate, she would have had to bill 2,560 hours in a year, whereas if she had been billing at her standard rate she would have easily met her standard budget.  Id.  When asked about this in his deposition, Antonetti testified that "it would not be fair to ask somebody to work twenty five hundred hours below allowance a year."  (Docket No. 63-4 at p. 57.)  This factual dispute supports an inference that FGR's proferred legitimate reasons for Taboas's dismissal were mere pretext.

**c.   FGR's' Executive Committee Decisions**

FGR contends that Taboas cannot produce evidence to refute that its Executive Committee based its decision to dismiss Taboas on (1) her underproductivity; (2) her knowledge

---

[3] Billing for government work at FGR was capped at $125.00 per hour.  (Docket No. 63-4 at p. 50.)

of her underproductivity; (3) FGR's failed attempts to encourage
greater productivity from Taboas; and (4) clients and Shareholders
finding Taboas difficult to work with.  (Docket Nos. 51-24 at
pp. 26, 27, 30, 34; 51-25 at ¶¶ 10-11; 51-3 at ¶¶ 36-37; 51-23 at
¶¶ 14-15; 51-11.)  FGR further argues that it did not dismiss
Taboas prior to 2009, despite her "chronic lack of productivity,"
because a new wave of administrative leadership, focused on
implementing cost-saving measures, took control of FGR's
administration following the 2008 financial crisis and implemented
more aggressive compliance with production standards.  (Docket
No. 51-1 at p. 19.)  As a result of the new cost-saving measures,
FGR avers, the Executive Committee decided to offer of-counsel
contracts to several chronic underproducers, including Taboas.  Id.

        FGR does not provide meeting minutes, or any
other form of documentation, to support these business decisions.
To the contrary, FGR claims that no Executive Committee meeting
minutes were kept.  (Docket No. 63-2 at pp. 22-23.)  The absence of
any documentation confirming a company's implementation of
personnel policy changes may be "sufficient to raise a genuine
factual dispute as to whether the asserted reason was pretextual"
and may provide circumstantial evidence that the policy change did
not in fact exist.  McGinest v. GTE Serv. Corp., 360 F.3d 1103,
1123 (9th Cir. 2001) (cited with approval in Rivera Rodriguez v.
Sears Roebuck de P.R., Inc., 432 F.3d 379, 382 (1st Cir. 2005)).

The Court finds this to be the case here.  FGR's defense hinges on the nature of multiple Executive Committee decisions, and, accordingly, the credibility of the four Executive Committee members purporting to have made those decisions.  The absence of any documentation to confirm the policy decisions suggests the weakness of FGR's proffered reasons, such that the Court finds sufficient circumstantial evidence to raise a genuine factual issue as to whether FGR's asserted non-discriminatory reasons for Taboas' dismissal were pretextual.

### d.   Disparate Treatment of Younger Employees

While the aforementioned aspects of the record support a conclusion that FGR's proffered reasons for Taboas's termination were pretextual, Taboas still must adduce evidence from which a jury could reasonably find that FGR's true motivation for terminating her was age discrimination.  See Velez v. Thermo King de P.R., Inc., 585 F.3d 441, 450 (1st Cir. 2009).  "An employer's disparate treatment of employees in response to behavior that legitimately offends the employer can provide evidence of discriminatory animus."  Thermo King, 585 F.3d at 451 (citing McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 283 (1976)).  In order to indicate discriminatory animus, however, a claim of disparate treatment "must rest on proof that the proposed analogue is similarly situated in material respects."  Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 752 (1st Cir. 1996).

In response to Taboas' protestations regarding her below-rate assignments, FGR attorneys claimed that her assignments were limited because (1) Shareholders were loathe to assign work to her, and (2) Members were responsible for generating a significant share of their own work. In 2005, Antonetti wrote to Taboas, "it is not expected of someone of your category, experience and compensation to depend on all of your work being assigned by others, but rather, on the contrary, you be a source of your own work." (Docket No. 51-8 at p. 1). FGR's promotion guidelines note that Members "should have consistently demonstrated a concern for significantly developing new areas of service or obtaining new clients for the Law Firm; and in fact have brought in client (sic) to the Law Firm." (Docket No. 51-5 at p. 3; see also Docket No. 63-4 at p. 78.

In light of FGR's contentions regarding Members generating their own work, Taboas points to record evidence that she did so to a greater extent than similarly situated attorneys working in the same position and division as she. When Antonetti was asked in his deposition about production reports that FGR relied on in assessing Taboas' productivity, he conceded that she was, in 2008, the Member with the most money billed in files to her name. (Docket No. 63-4 at p. 74.) Similarly, in 2008 and 2009, Taboas billed much higher amounts in her own files than Maria Montalvo, Tomas Roman, and Roberto Camara, Members in the

litigation division who were much younger than she.  These Members were not sanctioned for their low quantity of self-billed files, but rather were promoted to Shareholders in December of 2010. (Docket No. 63-39.)  In 2010, Taboas' billing amounts in her own files were less than those of Maria Montalvo, but significantly higher than Roberto Camara and Tomas Roman.  Id.

On this record, Taboas argues that FGR engaged in disparate treatment by purporting to require her to generate more of her own work, and firing her when she failed to do so, while neglecting to require the same from similarly situated, younger employees.  The Court agrees that these facts permit an inference of disparate, age-based treatment.  This inference of disparate treatment, when considered alongside plaintiff Taboas' *prima facie* case, see Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147-8 (2000), and the fact that Taboas was over-budget at the time of her dismissal, creates a genuine factual issue that FGR's true reason for firing Taboas was her age. Resolution of these factual disputes depends on numerous credibility determinations not properly considered at the summary judgment stage.  Accordingly, FGR's motion for summary judgment is **DENIED**.

Civil No. 13-1205 (FAB)                                              27

    **C.   Plaintiff Taboas' Puerto Rico Law Claims**

    **1.   Law 100 Claim**

        FGR moves for summary judgment of plaintiff Taboas' Law 100 claim.   Law 100, Puerto Rico's general employment discrimination statute, prohibits employment discrimination on the basis of age.   Puerto Rico Laws Ann. tit. 29 § 146.   Pursuant to Law 100, a presumption of discrimination is triggered where a plaintiff establishes that her dismissal was not justified.   <u>Ramos v. Davis & Geck, Inc.</u>, 167 F.3d 727, 734 (1st Cir. 1999).   In contrast to the presumption employed in ADEA analysis, once the Law 100 presumption has been triggered, an employer has both the burden of production and the burden of persuasion.   <u>Ibañez-Benitez v. Molinos de P.R., Inc.</u>, 14 P.R. Offic. Trans. 58 (1983); <u>see also</u> <u>Alvarez Fonseca v. Pepsi Cola of P.R. Bottling Co.</u>, 152 F.3d 17, 27-8 (1st Cir. 1998).   Thus, in order to defeat the presumption, an employer must prove, by a preponderance of the evidence, that the dismissal was not discriminatory.   <u>Ibañez-Benitez</u>, 14 P.R. Offic. Trans.   If an employer successfully rebuts the presumption, an employee has the burden of proving the existence of discrimination. <u>Id.</u>

        The same evidence that supports plaintiff Taboas' *prima facie* ADEA case also triggers the Law 100 presumption.   While FGR proffered legitimate, non-discriminatory reasons for Taboas's termination, whether FGR can <u>prove</u> those reasons to be true by a

preponderance of the evidence involves multiple credibility determinations. The genuine disputes of material fact that the Court identified above with regard to FGR's proffered justifications and Taboas's allegations of discriminatory animus are also relevant to her Law 100 claim. Accordingly, the Court **DENIES** FGR's motion for summary judgment of plaintiff Taboas' Law 100 claim.

### 2    Plaintiff Taboas' Law 80 Claim

FGR and Taboas both move for summary judgment of her Law 80 claim. Law 80 provides, in relevant part,

> Every employee in commerce, industry, or any other business or work place, . . . who is discharged from his/her employment *without just cause*, shall be entitled to receive from his/her employer, in addition to the salary he/she may have earned:
>
> (a) the salary corresponding to six (6) months . . . ;
>
> (b) an additional progressive compensation equal to three (3) weeks for each year of service. . . .

P.R. Laws Ann. tit. 29 § 185a (emphasis added). The initial burden for a Law 80 claim is on a plaintiff to establish that he or she was dismissed and that his or her dismissal was unjustified. Hoyos v. Telecorp Commc'n., Inc., 488 F.3d 1, 6 (1st Cir. 2007) (internal citation omitted). Once that showing has been made, the burden shifts to the employer to establish that the discharge was for good cause. Id.

FGR concedes that Taboas was dismissed. Taboas, by alleging that she was unjustly terminated, has met her initial burden.  The Court's inquiry is thus whether FGR has established that no genuine issues of material fact exist to suggest that Taboas' termination was unjustified.  FGR contends that it had just cause for dismissing Taboas due to her failure to meet FGR's production goals for Members.  (Docket No. 51-1 at p. 22.)  Because the Court found above that a genuine factual dispute exists regarding FGR's discriminatory animus, however, the sufficiency of FGR's just cause becomes a question of credibility.  See Yamayo v. Banco Santander P.R., 552 F. Supp. 2d 172, 180 (D.P.R. 2007) (Besosa, J.).  Accordingly, defendant's motion for summary judgment of plaintiff Taboas' Law 80 claim is **DENIED.**

Plaintiff Taboas' primary argument in favor of summary judgment of her Law 80 claim is that in order for FGR to have just cause to fire her for failure to comply with its productivity goals, those goals must have been in writing pursuant to Law 80's section 185b(c).  (Docket No. 54.)[4]  Subsection (c), however, does not provide FGR's only path for offering just cause. Subsection (b), for example, states that just cause exists where "[t]he attitude of the employee of not performing his work in an

---

[4] Plaintiff Taboas supports this argument with untranslated Puerto Rico court cases on which the Court cannot rely in reaching its ruling.  See Puerto Ricans for P.R. Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008).

efficient manner, or of doing it belatedly and negligently or in violation of the standards of quality of the product produced or handled by the establishment."  Puerto Rico Laws Ann. tit. 29 § 185b(b).  Additionally, Law 80 "does not intend to be, nor should it be, a code of conduct containing a list of clearly defined offenses with their corresponding penalties for each case." Delgado Zayas v. Hosp. Interamericano de Medicina Avanzada, 1994 P.R. - Eng. 908 (1994).  Thus, if FGR establishes that it informed Taboas of its productivity requirements, that Taboas was aware of the potential repercussions for failing to meet those requirements, and that FGR ultimately dismissed Taboas for failure to meet the requirements, FGR can rebut the presumption that Taboas's dismissal was capricious or abusive.

Here, Taboas concedes that she was aware of FGR's hours-based productivity goals.  (Docket No. 63-7 at pp. 26-27.) Issues of fact remain, however, regarding whether Taboas knew that she was being sanctioned in 2005 for underproductivity.  The parties dispute whether the previously mentioned communications from Antonetti and Vizcarrondo evidence sanctions for underproductivity, or can reasonably be interpreted as incentives for future productivity.  Additionally, a factual dispute exists as to whether FGR's production goals were reasonable — as required by Section 185b(c) — in light of the work and rates assigned to Taboas.  As explained above, Taboas notified Antonetti that she had

Civil No. 13-1205 (FAB)                                              31

been assigned work at almost half her hourly billing rate, and that
at that rate she would need to bill 2,560 hours in order to satisfy
her production budget, an amount Antonetti conceded would be
unfair.  (Docket No. 63-25; 63-4 at p. 57.)  Additionally, Acosta
stated that Taboas repeatedly expressed that she was willing to
take on more work, and that she was diligent, competent and
professional.  (Docket No. 63-26 at pp. 56-57.)  Because these
factual issues remain contested and hinge on credibility
determinations, plaintiff Taboas' motion for summary judgment of
her Law 80 claim is also **DENIED.**

## III. Conclusion

For the reasons articulated above, the Court **DENIES** defendant
FGR's motion for summary judgment (Docket No. 51), plaintiff
Taboas' motion for partial summary judgment (Docket No. 54), and
plaintiff Taboas' second motion to strike (Docket No. 76.)  The
Court **GRANTS IN PART AND DENIES IN PART** plaintiff Taboas' first
motion to strike (Docket No. 60.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 20, 2014.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              United States District Judge